UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MINDY WATTON,                                    :
                          Plaintiff,              :
                                                 :          **OPINION AND ORDER**
v.                                               :
                                                 :          16 CV 571 (VB)
COUNTY OF ROCKLAND,                              :
                          Defendant.             :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Mindy Watton brings this action against defendant the County of Rockland,

alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of

1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").  Plaintiff also

brings a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983.

        Now pending before the Court is the County's motion for summary judgment.  (Doc.

#42).

        For the following reasons, the motion is GRANTED.

        The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

        The parties have submitted briefs, declarations with exhibits, and statements of material

fact pursuant to Local Civil Rule 56.1, which reflect the following factual background.

A.      County Clerk's Office

        Plaintiff worked in the County Clerk's Office from February 1994 through approximately

November 2011.  On July 19, 2011, the County issued plaintiff a disciplinary charge of Gross

Misconduct for "dereliction of duty and insubordination." (Weissman Decl. Ex. P at RC 31[1]). The County suspended plaintiff, effective the following day.

Plaintiff and the County entered into a stipulation in which plaintiff consented to a temporary assignment in the County Department of Social Services ("DSS"), with the intention of establishing her as a permanent employee there pursuant to a future legislative resolution. Pursuant to the stipulation, plaintiff did not admit or deny the validity of the disciplinary charges, and the County agreed to withdraw the charges with prejudice. The County also put plaintiff on probation for one year.

B.      CAMS Unit

Plaintiff began working as a Principal Records Clerk in the Cash Management System ("CAMS") Unit at the County DSS in January 2012. The CAMS Unit, which was responsible for recovering money owed to DSS, consisted of Bruce Machlis, the Collections Assistant; plaintiff; and Lewis Jefferies, the Director of Compliance and Resource Recovery and Machlis's and plaintiff's supervisor. Carol Barbash, Machlis's ex-wife, was DSS's Director of Legal Services and Deputy Commissioner of Social Services. Beginning in December 2012, plaintiff and Machlis shared an office.

On June 29, 2013, plaintiff attended a Rockland Boulders minor league baseball game with her husband and their son. Machlis and his wife also separately attended the Boulders game. Machlis, plaintiff, and their spouses became involved in a confrontation. Machlis chronicled the incident in a letter to Jefferies the following week. In the letter, Machlis claimed plaintiff told his wife he "kissed her in the office" and said she would "tell [Barbash] whatever

---

[1]      Citations to the record follow the labeling and numbering of the exhibits as they were made part of the record. Pin cites to "RC" refer to the Bates-stamped page numbers of the exhibits.

she had to tell her to hurt [Machlis], and would, in effect, cause of [sic] [Machlis] to lose [his] job." (Weissman Decl. Ex. KK at RC 53)

Plaintiff, on the other hand, testified Machlis was "talking inappropriately to [her]" and "groping [her]" while in line at the concession stand. (Gould Aff. Ex. 5 ("Pl. Dep., dated Nov. 10, 2016"), at 62–63). Plaintiff testified she told Machlis "if he did not stop [she] would report him to [Barbash]." (Id. at 62). Plaintiff also testified she told Machlis's wife "that [her] husband has been sexually harassing [her] at work and just did the same thing to [her] at the concession stand." (Id. at 73).

Machlis called Barbash after the incident, while still at the stadium, and Barbash informed Jefferies the next workday.

On Monday, July 1, 2013—two days after the incident at the baseball game—Jefferies testified he had to move plaintiff out of the office she shared with Machlis to ensure plaintiff "was not exposed to anything further." (Gould Aff. Ex. 10 at 54). As plaintiff was not in the office, Jefferies "remov[ed] her belongings from the office so that she wouldn't have to go back there." (Id. at 54).

In addition, Jefferies, after consulting with Barbash and June Gray, a DSS Personnel Administrator, decided to transfer plaintiff to the DSS Family Law Division "to work on a special project." (Weissman Decl. Ex. QQ (the "Gray Memo") at RC 444). According to Barbash, they reasoned Machlis's skill-set was better-suited to remaining in CAMS and plaintiff's skills and title were more transferable.

Plaintiff returned to work on July 2, 2013, to find her desk at CAMS cleared off. Plaintiff then met with Jefferies and Gray twice on the same day.

In the first meeting, Jefferies and Gray informed plaintiff they were relocating her to the DSS Family Law Division. According to Gray, plaintiff "was not pleased," and "left the meeting stating that she wanted to call the union regarding harassment charges against [Machlis] and . . . to call her husband." (Gray Memo at RC 444).

Both plaintiff and her husband attended the second meeting with Jefferies and Gray. According to Gray, plaintiff and her husband stated plaintiff and Machlis had a "consensual and short-lived" relationship, "they wanted to put it in the past," and felt plaintiff could continue to work with Machlis. (Gray Memo at RC 444). Jefferies likewise testified that plaintiff's husband said plaintiff and Machlis had an affair.

Plaintiff's husband, however, later testified that plaintiff said at the second meeting she should be able to keep her job and Machlis should be the one transferred. Moreover, both Machlis and plaintiff later testified that they did not have an affair or sexual relationship.

Jefferies and Gray did not investigate further plaintiff's claim of sexual harassment, and plaintiff was transferred to the Family Law Unit with the same title, pay, and benefits.

C.    Family Law Unit

Plaintiff worked in the Family Law Unit for over eight months without incident. Then, on March 21, 2014, plaintiff sent Machlis an email, without a subject, writing:

> Hi Bruce, how is cams doing? I really miss it. I really want to come back. If you really care about me the way you have said you do, you will speak to [Barbash] about getting my position back and telling her what a great asset I was to the department. We worked so well together and cams was our domain. Please make it happen. I know you can. P.S. maybe we can meet for lunch today to discuss things.

(Weissman Decl. Ex. SS (the "March 21 E-Mail") at RC 885).

Subsequently, on July 9, 2014, plaintiff filled out a leave report (the "Leave Report") seeking permission to use sick leave from 3:00 p.m. to 5:00 p.m. Plaintiff submitted the Leave

Report to Jefferies, who approved it.  Plaintiff subsequently altered the Leave Report so that it falsely indicated plaintiff was at work from 3:00 p.m. to 4:00 p.m.  According to plaintiff, she believed she had permission to alter the Leave Report.

The next day, Jefferies, Barbash, and Gray met with plaintiff and presented her with a Letter of Reprimand, which plaintiff refused to sign.  Plaintiff told them she was going to "make a complaint" or "bring harassment charges," which Jefferies and Barbash understood to refer to the incidents involving Machlis the previous summer.  (Gould Aff. Ex. 6 at 9, Ex. 10 at 141).

D.    OERR Investigation and Report

On August 1, 2014, plaintiff met with investigators from the County Office of Employee Rights and Relations (the "OERR"), a division of the County Department of Personnel, where Joan Silvestri was the Commissioner.  Plaintiff alleged Machlis had sexually harassed her while working in the CAMS Unit.  Plaintiff also identified Ileen Stainback, a CAMS employee at the time, as a possible witness, stating Machlis had engaged in flirtatious behavior with Stainback.

On or about August 7, 2014, plaintiff filed an Equal Employment Opportunity ("EEO") Complaint with the OERR against Jefferies, Barbash, and Machlis, alleging Machlis sexually harassed her; Jefferies and Gray failed to investigate the matter; and Barbash and Jefferies issued the Letter of Reprimand in retaliation for plaintiff accusing Machlis of sexual harassment.

The OERR investigated plaintiff's complaint, interviewing plaintiff three times and Machlis twice, as well as Gray, Jefferies, Barbash, and Stainback.  On or about October 29, 2014, the OERR issued a report concluding that plaintiff's claims of sexual harassment, failure to investigate the sexual harassment, and retaliation were unsubstantiated.

The OERR also found Machlis had altered the March 21 E-Mail before presenting it to the OERR "to make it appear as though [plaintiff] was apologizing for (nonspecific) actions she

may have committed that resulted in the transfer and the end of their friendship." (Weissman Decl. Ex. WW ("OERR Report") at 24). Moreover, the OERR found plaintiff had presented false information about the lack of social friendship between the Machlises and the Wattons and whether plaintiff had contact with Machlis after her transfer out of CAMS. In addition, the OERR found plaintiff had asked Stainback to lie to the OERR; according to the OERR, plaintiff asked Stainback to claim Machlis had sexually harassed Stainback.

Thus, the OERR recommended bringing disciplinary charges against plaintiff and Machlis for gross misconduct involving moral turpitude "because of the employee[s'] disregard for the truth as well as the integrity of the EEO process," and also recommended penalties of "a significant suspension without pay, a demotion, or termination." (OERR Report at 2).

E.      Charges Against Plaintiff and Machlis

In light of the OERR recommendations, Susan Sherwood, the DSS Commissioner at the time, met with plaintiff and Machlis and offered them the opportunity to resign in exchange for a neutral letter of reference. Both declined and, on November 21, 2014, both were suspended without pay. The same day, Commissioner Sherwood issued disciplinary charges against plaintiff for "Gross Misconduct: Attempted Fraud," for allegedly "attempting to secure a false statement in support of [her] human rights complaint" from Stainback; and "Gross Misconduct: Fraud," for allegedly making materially false statements in the course of the OERR investigation. (Weissman Decl. Ex. LLL at RC 1276–77).

Commissioner Sherwood also issued a disciplinary charge against Machlis for "Gross Misconduct: Fraud: Materially Altering an E-Mail Message and Knowingly Submitting the False E-Mail Message to Investigators in the Course of a Human Rights Investigation." (Weissman Decl. Ex. NNN at RC 883).

Machlis's attorney negotiated a settlement with Jeffrey Fortunato, the Assistant County Attorney for labor relations, in which Machlis admitted to the charges, received an unpaid fifty-four day suspension and two years of incident specific probation.

Plaintiff, on the other hand, on the advice of Larry Sparber, her union representative, elected to resolve the charges against her via binding arbitration pursuant to a collective bargaining agreement, rather than through a N.Y. Civ. Serv. Law § 75 hearing. The County subsequently dropped the second charge against her, pursuing only the attempted fraud charge.

On the morning of the arbitration, plaintiff's attorney spoke with Fortunato about whether they could settle the charges against plaintiff. After consulting with Commissioner Sherwood, Gray, and Silvestri, Fortunato proposed the charges be resolved by demoting plaintiff from Principal Records Clerk to Records Clerk, which would also have involved a decrease in salary and retirement benefits.

Plaintiff's attorney never offered to have plaintiff admit to the charges. Plaintiff's attorney advised plaintiff that she had the choice of either demotion or arbitration. Plaintiff refused the offer of a demotion and proceeded with arbitration.

F.      Arbitration

The arbitration hearing was conducted on February 20, 2015, before Arbitrator Ruth D. Raisfeld, Esq., following which both parties submitted post-hearing briefs. On April 8, 2015, Arbitrator Raisfeld issued a decision and award (the "2015 Decision and Award") finding plaintiff had engaged in the gross misconduct specified in the charge, including "intentionally mis[leading] the OERR investigation by suggesting to them that [Stainback] had also experienced sexually harassing behavior by [Machlis] when [Stainback] said she hadn't." (Weissman Decl. Ex. E (the "2015 Decision and Award") at RC 300). The arbitrator also found

plaintiff had "demonstrated that she does not understand the importance of being truthful either with co-workers or with individuals charged by the County to enforce important EEO policies." (2015 Decision and Award at RC 300–01).

Arbitrator Raisfeld recommended the County terminate plaintiff. In doing so, the arbitrator specifically addressed the argument that plaintiff should not suffer a harsher penalty than Machlis, and found plaintiff's behavior was distinguishable. The arbitrator wrote:

> Here, [plaintiff] came into the Arbitration and maintained the story that she was only trying to help Stainback avoid sexual harassment, when all other written and testimonial evidence pointed to [plaintiff's] scheme to procure testimony that would support her convoluted conclusion that her supervisor had retaliated against her for a complaint of sex harassment against [Machlis] that [plaintiff] apparently never made. Then, [plaintiff] went even further astray by impugning the credibility of [Stainback], Jefferies, Barbash, Gray, and others.

(2015 Decision and Award at RC 301–02).

Commissioner Sherwood terminated plaintiff the same day. Plaintiff did not move to vacate the award.

## DISCUSSION

I.      Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.      Gender Discrimination

The County argues plaintiff's gender discrimination claims under Title VII and the NYSHRL fail as a matter of law.

The Court agrees.

Discrimination claims under Title VII and the NYSHRL are analyzed identically. Zacharowicz v. Nassau Health Care Corp., 177 F. App'x 152, 155 (2d Cir. 2006) (summary order).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Under the familiar McDonnell Douglas framework, a plaintiff must establish a prima facie case of discrimination by demonstrating "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). Plaintiff's "burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) (internal citation omitted). After plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011). If the

employer meets that burden, "[t]he burden then shifts back to the plaintiff to show that [the employer's] stated reason for the adverse employment action was in fact pretext." Id. (internal quotation marks and alterations omitted).

The County argues plaintiff fails as a matter of law to establish an inference of discrimination because there is no strong evidence the 2015 Decision and Award was wrong as a matter of fact or that the impartiality of the proceeding was somehow compromised.

The Court agrees.

"Where an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive." Collins v. N.Y.C. Transit Auth., 305 F.3d at 115. "Where . . . that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised." Id. at 119 (emphasis added).

The Collins standard applies here. Arbitrator Raisfeld found plaintiff guilty of the charge the County brought against her. Moreover, the arbitrator did not just allow the County to terminate plaintiff—she affirmatively recommended it even after the County had offered plaintiff a more lenient penalty.

Plaintiff raises several arguments for why the 2015 Decision and Award was wrong as a matter of fact and the impartiality of the proceeding was compromised. They are all unpersuasive. The Court addresses each in turn.

First, plaintiff seems to argue the proceeding was not impartial because there was no transcript or recording of the arbitration, and there was no discovery.

Plaintiff was represented by counsel, had the right to present oral and written evidence and to examine witnesses, and "was allowed to and did submit a post-hearing memorandum." Simpson v. N.Y.S. Dep't of Civil Serv., 2005 WL 545349, at *15 (N.D.N.Y. Mar. 1, 2005), aff'd sub nom. Simpson v. N.Y.S. Dep't of Civil Servs., 166 F. App'x 499 (2d Cir. 2006). Moreover, the lack of discovery "has no bearing on the impact of Collins on the present case." Id. at *16.

Second, plaintiff argues the 2015 Decision and Award does not sufficiently analyze plaintiff's gender discrimination or retaliation claims. "Under Collins and its progeny, failure to address the discrimination issue in an arbitration does not diminish the impact of that arbitration on a subsequent discrimination action." Simpson v. N.Y.S. Dep't of Civil Serv., 2005 WL 545349, at *16. Therefore, Collins would still apply even if the 2015 Decision and Award did not address plaintiff's discrimination claims.

Third, plaintiff argues the Court can infer discrimination from Assistant County Attorney Fortunato's post-hearing brief, in which Fortunato stated plaintiff and Machlis had a consensual sexual relationship. Plaintiff offers no legal support for her argument, and the Court knows of none. Fortunato's statements were nothing more than an advocate's closing argument on behalf of a client.

Fourth, plaintiff argues the County's refusal to offer plaintiff the same settlement offer as it did to Machlis raises an inference of discrimination. Arbitrator Raisfeld specifically rejected plaintiff's argument that she should not suffer a harsher penalty than Machlis, determining Machlis's behavior was distinguishable.

Finally, plaintiff argues the County failed to produce several documents at the arbitration, which affected the arbitrator's credibility determinations.

Plaintiff first relies on the Gray Memo, which she argues establishes that she had accused Machlis of sexual harassment in the past, and thus would have bolstered her credibility at the arbitration. However, even if the Gray Memo did establish plaintiff previously had accused Machlis of sexual harassment, plaintiff fails to explain how prior accusations of Machlis's alleged sexual harassment detract from Arbitrator Raisfeld's reasoning in the 2015 Decision and Award. The arbitrator determined plaintiff attempted to secure a false statement in support of her human rights complaint from Stainback. Plaintiff's prior accusations against Machlis are only tangentially related to the decision and therefore had little bearing on the outcome.

Plaintiff next relies on an April 24, 2014, memorandum, written by plaintiff, arguing the memorandum supports her contention at the arbitration that Stainback had previously asked her to make a false statement about a different incident. Thus, plaintiff argues, the memorandum would have bolstered plaintiff's credibility at the arbitration.

The April 24, 2014, memorandum does no such thing. It merely states Stainback told plaintiff "she had an argument with Maria and that Maria threatened to beat her up." (Gould Aff. Ex. 24 at RC 1389). The memorandum does not mention anything about Stainback asking plaintiff to make a false statement.

Plaintiff lastly relies on the full notes of the OERR investigation, including notes from Machlis's and Stainback's interviews, arguing the notes would have been useful at the arbitration on Stainback's cross-examination. With regard to the notes from Machlis's interview, plaintiff emphasizes a single line saying, "Rumor mill – [Stainback] – not credible." (Weissman Decl.

Ex. MM at RC 1355).  But that single line has little to do with the charge at issue in the arbitration and therefore is not strong evidence that the arbitrator's decision was wrong.

As for plaintiff's argument that the OERR notes show Stainback embellished her testimony at the arbitration, even if there are differences between the notes and the arbitration testimony, they are at most "minor inconsistencies" and not strong evidence that the arbitrator's decision was wrong.  Halstead v. N.Y.C. Transit Auth., 78 F. App'x 750, 753 (2d Cir. 2003) (summary order).

Accordingly, plaintiff fails to show the 2015 Decision and Award was wrong as a matter of fact or that the impartiality of the proceeding was compromised.  Therefore, plaintiff's gender discrimination claims under Title VII and the NYSHRL fail as a matter of law.

III.    Retaliation

For the same reasons plaintiff cannot establish an inference of discrimination on her gender discrimination claims, plaintiff fails as a matter of law to establish a causal connection on her retaliation claim.  See Hedlund v. N.Y.C. Transit Auth., 507 F. App'x 35, 37 (2d Cir. 2013) (summary order) (applying Collins and affirming grant of summary judgment on retaliation claim).  Accordingly, plaintiff's claims for retaliation under Title VII and the NYSHRL fail as a matter of law.

IV.    Section 1983

The County argues plaintiff's Section 1983 claim fails as a matter of law because DSS Commissioner Sherwood was not a final policymaker for Monell purposes.

The Court agrees.

A municipality is liable under Section 1983 only "when execution of a [municipal] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658 , 694 (1978). Thus, plaintiffs must prove a municipal policy or custom proximately caused the alleged constitutional violation. Cash v. Cty. of Erie, 654 F.3d 324, 341–42 (2d Cir. 2011).

"Where a plaintiff seeks to hold a municipality liable for a single decision by a municipal policymaker, the plaintiff must show that the official had final policymaking power. Moreover, the challenged actions must be within that official's area of policymaking authority." Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks, citations, and alterations omitted). "Whether an official has final policymaking authority is a legal question, determined on the basis of state law." Id. at 37. "The matter of whether the official is a final policymaker under state law is 'to be resolved by the trial judge before the case is submitted to the jury.'" Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (emphasis in original)).

"An official has final authority if his decisions, at the time they are made, 'may fairly be said to represent official policy.'" Roe v. City of Waterbury, 542 F.3d at 37 (quoting McMillian v. Monroe Cty., Ala., 520 U.S. 781, 784 (1997)). "[T]he critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." Id. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policy makers, they have retained the authority to measure the official's conduct for conformance with their

policies." Vives v. City of N.Y., 524 F.3d 346, 356 n.9 (2d Cir. 2008) (quoting St. Louis v. Praprotnik, 485 U.S. 112 (1988) (plurality opinion)).

Here, the County's EEO Policy "puts the County Executive, and not the [DSS Commissioner]," in the final policymaker role." Baity v. Kralik, 51 F. Supp. 3d 414, 440 (S.D.N.Y. 2014). The County Executive merely delegated department heads such as Commissioner Sherwood "the general responsibility for ensuring that the Executive Order is fully implemented within their departments." (Weissman Decl. Ex. Z at RC 230). The County Executive, on the other hand, maintained "overall authority and responsibility for the coordination, implementation and enforcement of [the EEO Policy]" and "the right to interpret, change, modify, or eliminate any provision contained within [the EEO Policy]." (Id.).

Plaintiff argues Commissioner Sherwood was a final policymaker because she had the authority to determine personnel requirements, and exercised that authority in suspending and terminating plaintiff. The Court is not persuaded. Commissioner Sherwood "may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 n.12 (1986) (plurality opinion).

Accordingly, plaintiff's Section 1983 claim fails as a matter of law.

**CONCLUSION**

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #42) and close this case.

Dated:  July 27, 2018
           White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge